## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

AALIYAH RENEE JONES,

       Plaintiff,

vs.

FIRST ADVANTAGE
BACKGROUND SERVICES CORP.,

       Defendant.

CASE NO.:

**JURY TRIAL
DEMANDED**

## COMPLAINT

Plaintiff Aaliyah Renee Jones ("Plaintiff" or "Ms. Jones"), by and through her attorneys, brings the following Complaint and states as follows:

## INTRODUCTION

1. This is an individual action for damages, costs and attorneys' fees brought against First Advantage Background Services Corp. ("Defendant" or "First Advantage") pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers

1

who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.    Defendant falsely reported to Ms. Jones' new employer that she is a serial criminal, thief, and misdemeanant. This was inaccurate and untrue. Ms. Jones is not a serial misdemeanant and has *never* been charged with a crime. Ms. Jones' new employer terminated her employment after receiving an employment background check report from Defendant which included criminal conviction records that do not belong to her.

4.    After Ms. Jones was forced to dispute the inaccurate criminal record information contained within Defendant's employment background check report twice, Defendant eventually corrected the inaccurate criminal record information and provided an updated report to her employer. However, Defendant's second report marked Ms. Jones' Social Security Verification score as "Decisional," which still left Ms. Jones ineligible for hire.

5.    Thereafter, Ms. Jones disputed the reporting of her Social Security Verification score as "Decisional" and provided the documentation that Defendant requested, including a copy of her driver's license and Social Security card. However, Defendant failed to conduct a reasonable reinvestigation to determine whether the disputed Social Security Verification score was inaccurate and record

the current status of the disputed information, or delete the item from Ms. Jones'
file.

6.     Defendant's inaccurate report could have been easily remedied had
Defendant consulted current public records prior to issuing Ms. Jones' report to her
employer in the first place.

7.     Defendant does not employ reasonable procedures to ensure the
maximum possible accuracy of the information it reports regarding consumers.
Defendant's failure to employ reasonable procedures resulted in Ms. Jones' report
being inaccurate on not one, but two different occasions.

8.     Defendant's inaccurate reporting cost Ms. Jones a job and multiple
employment opportunities, causing her to suffer a range of actual damages,
including without limitation, loss of employment opportunities, wages, and
benefits; loss of economic opportunities and positions and advances in the future;
loss of time and money trying to correct her background check report; damage to
her reputation; loss of sleep; lasting psychological damage; loss of capacity for
enjoyment of life; and emotional distress, including mental anguish, frustration,
humiliation, and embarrassment.

9.     As a result of Defendant's conduct, Ms. Jones brings claims for
Defendant's failure to use reasonable procedures to ensure maximum possible

accuracy based on § 1681e(b) of the FCRA and Defendant's failure to conduct a reasonable reinvestigation of her disputed information based on § 1681i of the FCRA.

## THE PARTIES

10.     Plaintiff Aaliyah Renee Jones is a natural person who resides in New Bern, North Carolina, and who is a "consumer" protected by the FCRA.

11.     Defendant First Advantage Background Services Corp. is a Georgia corporation that provides more than 55 million background checks annually to 17.2 million applicants. https://fadv.com/about-us/ (last visited May 16, 2019). Defendant's principal place of business is at 1 Concourse Parkway NE, Suite 200, Atlanta, Georgia 30328.

12.     Defendant is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) ("CRA") because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over Ms. Jones' claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant resides in this District.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

15.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background checks like the one First Advantage prepared in Ms. Jones' name.

16.     The FCRA provides a number of protections for job applicants who are subjected to background checks.

17.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like First Advantage, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

18.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

19.     The FCRA also provides a mechanism for job applicants to dispute and correct inaccurate employment background reports. Under 15 U.S.C. § 1681i(a), job applicants can submit disputes to a CRA regarding the accuracy or completeness of any information in their file. Upon receipt of the dispute, the FCRA requires that the CRA conduct a reasonable reinvestigation of any information that is disputed by a consumer to determine if the information is accurate. The CRA must notify the source of the disputed information about the consumer's dispute. The CRA must provide the source with all relevant information received from the consumer. The CRA must review and consider all relevant information provided by the consumer in conducting the reinvestigation. The CRA must delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified. The CRA must complete the reinvestigation within 30 days, or within 45 days if the dispute is based on a free annual credit report. The CRA must send the consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation. 15 U.S.C. § 1681i(a)(1)(A).

**FACTS**

**First Advantage Publishes an Inaccurate Background Check to
Plaintiff's Employer**

20.    In or around late October 2018, Ms. Jones applied for employment as a Production Operator with Moen, Inc. ("Moen"), a manufacturer and designer of kitchen and bath faucets, showerheads, and other accessories, through Adecco Staffing ("Adecco") in New Bern, North Carolina.

21.    In or around October 2018, Ms. Jones participated in an in-person interview with a Recruiter at Adecco, Dawn Mallory ("Ms. Mallory"). During this interaction, Ms. Jones received a conditional offer of employment pending successful completion of a background check.

22.    Thereafter, in or about early November 2018, Ms. Mallory contacted Ms. Jones and informed her that Adecco and Moen had approved her employment application and that her first day of orientation and training at Moen's New Bern facility was scheduled for 10:30 A.M. on November 16, 2018. Ms. Mallory also informed Ms. Jones that she had been approved to work the first shift, Monday through Friday from 7:00 A.M. to 4:00 P.M., with possible mandatory overtime shifts on Saturdays, and that she would be compensated at an hourly rate of $9.50.

23.    Adecco contracted with First Advantage to conduct background checks, including criminal background checks, on the prospective employees that it was attempting to place in the job market.

24.    On November 13, 2018, Adecco ordered Ms. Jones' criminal background check from First Advantage.

25.    On November 14, 2018, in accordance with its standard procedures, First Advantage completed Ms. Jones' background check.

26.    First Advantage's background check report ("background report") on Ms. Jones contained four pages of information, including three grossly inaccurate and stigmatizing misdemeanor convictions and two traffic offenses.

27.    The background report listed the following three misdemeanor criminal convictions and two traffic offenses from Craven County, North Carolina, belonging to a "Aaliyah Lanae Jones" and reported as follows:

**Case Reference #:** 14CR 220823

**Case Date:**            07/Sep/2014

**Name on File:**        AALIYAH LANAE JONES

**Address on File:**    5420 PORTREE PLACE APT 14, RALEIGH, NC

**DoB on File:**          07/18/XXXX

**Charge:**                 CONTRIBUTING TO THE DELINQUENCY OF A JUVENILE

8

**Charge Type:**   MISDEMEANOR

**Disposition:**   GUILTY

**Disposition Date:** 29/Feb/2016

**Sentence:**   CREDIT TIME SERVED 01 DAY; PROBATION 12 MONTHS; JAIL 45 DAYS / SUSPENDED; COURT COSTS 580

**Charge:**   MISDEMEANOR LARCENY

**Charge Type:**   MISDEMEANOR

**Disposition:**   GUILTY

**Disposition Date:** 29/Feb/2016

**Sentence:**   CONSOLIDATED WITH CASE # 14CR 220823 01

**Case Reference #:** 18CR 710409

**Case Date:**   04/June/2018

**Name on File:**   AALIYAH LANAE JONES

**Address on File:**  5420 PORTREE PL APT 14, RALEIGH, NC

**DoB on File:**   07/18/XXXX

**Charge:**   DRIVING WHILE LICENSE REVOKED NOT IMPAIRED REVOKED

**Charge Type:**   TRAFFIC

**Disposition:**     PENDING NEXT COURT DATE SCHEDULED
FOR

**Disposition Date:** 29/Nov/2018


**Case Reference #:** 18CR 734237

**Case Date:**       01/Jul/2018

**Name on File:**    AALIYAH LANAE JONES

**Address on File:** 5420 PORTREE PL APT 14, RALEIGH, NC

**DoB on File:**     07/18/XXXX

**Charge:**          DRIVING WHILE LICENSE REVOKED NOT
IMPAIRED REVOKED

**Charge Type:**     TRAFFIC

**Disposition:**     PENDING FAILURE TO APPEAR

**Disposition Date:** 05/Sep/2018


**Case Reference #:** 16CR 212056

**Case Date:**       14/Jun/2016

**Name on File:**    AALIYAH LANAE JONES

**Address on File:** 3924 HARESNIPE CT, RALEIGH, NC

**DoB on File:**     07/18/XXXX

**Charge:**          LARCENY

10

**Charge Type:**     MISDEMEANOR

**Disposition:**     GUILTY

**Disposition Date:** 03/Oct/2016

**Sentence:**     COURT   COSTS   5260;   PROBATION   18
MONTHS; JAIL 45 DAYS / SUSPENDED

28.     The three misdemeanor convictions and two traffic offenses *do not* belong to Plaintiff.

29.     Plaintiff has *never been charged with a crime*.

30.     A cursory review of the three criminal convictions as reported in the underlying court records from Wake County, confirms that the record belongs to an unrelated female living in Raleigh, North Carolina, named Aaliyah *Lanae* Jones ("Convicted Misdemeanant Aaliyah Jones"). Had First Advantage actually consulted or obtained the underlying court records, it would have seen obvious discrepancies between Convicted Misdemeanant Aaliyah Jones and Plaintiff.

31.     The discrepancies that should have caused First Advantage to realize Plaintiff is not the same person as Convicted Misdemeanant Aaliyah Jones include the following: (i) Convicted Misdemeanant Aaliyah Jones' address is listed in the underlying court records as Raleigh, NC 27616, Plaintiff's address history, as indicated in the employment report, confirms that she resides in New Bern, NC 28560; (ii) Each digit of the last four of Convicted Misdemeanant Aaliyah Jones'

11

Social Security number as listed in the underlying court records is different from the last four of Plaintiff's Social Security number as listed in the employment report; (iii) Plaintiff has never lived in Wake County, North Carolina; (iv) at the time Convicted Misdemeanant Aaliyah Jones committed her crimes in 2014 and 2016, Plaintiff was living in Rehoboth Beach, Delaware, which is 345 miles from Wake County, North Carolina, and in New Bern, North Carolina, which is 115 miles from Wake County, North Carolina, respectively; (v) Plaintiff has never been charged with or convicted of a crime in Wake County, North Carolina, or in any other county in the United States; and (vi) Plaintiff used her middle name of Renee or a middle initial "R" in any public records she completed and her middle name was specifically indicated in the employment report, and the middle name "Lanae" appears in the criminal records for Convicted Misdemeanant Aaliyah Jones by which First Advantage made the match with Plaintiff.

32.    The sole reason the three inaccurate misdemeanor convictions were reported as belonging to Plaintiff was that First Advantage failed to use reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's background report. Had First Advantage used reasonable procedures, it would have discovered that the inaccurate stigmatizing misdemeanor convictions belonged to an unrelated person living in a different zip code.

**Moen Terminates Plaintiff's Employment as a Direct Result of First Advantage's Inaccurate Background Check**

33.    On November 16, 2018, Ms. Jones arrived for her first day of new employee orientation at Moen's New Bern, North Carolina location.

34.    After successfully completing her first full hour of orientation, a female representative from Moen's Human Resources Department ("the Moen representative") approached Ms. Jones at her desk and asked her to step out into the hallway. Upon entering the hallway, the Moen representative informed Ms. Jones that she had received a call from Ms. Mallory at Adecco stating that Ms. Jones' background report from First Advantage came back with some "red flags," including criminal charges. The Moen representative then informed Ms. Jones that her employment was terminated, effective immediately, and that she needed to leave company property.

35.    Ms. Jones, shocked and surprised at this revelation, immediately told the Moen representative that First Advantage must have made a mistake because she's never been charged with a crime in her life and, therefore, no criminal history should be showing up on her background report. The Moen representative told Ms. Jones that she would need to contact Adecco regarding the information contained within her background report.

36.     Moen terminated Ms. Jones' employment as a direct result of the inaccurate criminal record information contained within the background report prepared by First Advantage.

37.     Immediately thereafter, Ms. Jones drove to Adecco's New Bern, North Carolina location and met with Ms. Mallory. Ms. Jones explained her situation in detail, informed Ms. Mallory that she had been terminated from Moen as a result of an inaccurate background report, and requested to see a copy of the background report that Adecco had provided to Moen.

38.     Ms. Mallory stated that she did not have a paper copy of the background report to provide to Ms. Jones at that time but that she did have a copy of the background report up on her computer screen. Ms. Mallory then explained that the background report included two pages of criminal charges from Wake County, North Carolina, including three misdemeanor convictions and two traffic offenses.

39.     Ms. Jones told Ms. Mallory that she's never lived in Wake County or ever been charged with a crime in Wake County. She then asked Ms. Mallory what steps needed to be taken in order to correct the misinformation. Ms. Mallory informed Ms. Jones that she needed to send an email to First Advantage to try and correct her background report but, in the meantime, recommended that Ms. Jones

go to the Craven County Courthouse to try and obtain proof that she has never been charged with a crime in North Carolina.

40.    While confused about how such a mistake could happen, and also fearful of what it meant to her ultimate ability to get her job back at Moen, Ms. Jones genuinely believed that such an obvious error would have to be fairly easily corrected. She kept her fingers crossed that after providing whatever proof Adecco and Moen needed to override this mistake, she could return to work.

### Plaintiff Disputes First Advantage's Inaccurate Background Check Through Adecco

41.    Ms. Jones went to the Craven County Courthouse and spoke with the Clerk of Court. She explained her situation in detail and stated that she needed a background check run in her name to prove to her employer that she did not have a criminal record. After submitting payment for $25.00, the Clerk entered Ms. Jones' first, middle, and last name, along with her full date of birth, into the computer system and ran a search. The search came back with no criminal record for Aaliyah Renee Jones, DOB 07/18/1994. Ms. Jones left with a copy of her clear criminal record report.

42.    Thereafter, Ms. Jones returned to Adecco's office and provided Ms. Mallory with a copy of her clear criminal record report from the Craven County

Clerk of Court. Ms. Mallory told her that she would send her clear criminal record report to First Advantage and would contact her as soon as she heard back.

43.    On November 19, 2018, Ms. Jones received email correspondence from Ms. Mallory with a copy of the First Advantage background report that was provided to Adecco and Moen on November 14, 2018. It contained the above-referenced criminal records belonging to Aaliyah *Lanae* Jones.

44.    On or about November 19, 2018, Ms. Jones sent a follow-up email to Ms. Mallory requesting an update.

**First Advantage Fails to Conduct a Reasonable Reinvestigation and Correct Plaintiff's Background Check After Plaintiff Submitted a Dispute Through Adecco**

45.    Later that same day, Ms. Jones received a telephone call from Ms. Mallory informing her that First Advantage sent Adecco a new copy of her background check report but that it still contained the same criminal record information as the first background check report. Shocked and dismayed, Ms. Jones asked Ms. Mallory how this could be, and stated that the criminal records included in her background report belonged to a different Aaliyah Jones with a different middle name. Ms. Mallory told her that she may need to get in touch with someone at First Advantage to take a closer look at her background report.

46.     Stressed and confused, Ms. Jones came to the realization that she was not going to be getting her job back at Moen anytime soon. Thus, she began looking for other employment opportunities.

### Plaintiff Disputes First Advantage's Inaccurate Background Check Directly With First Advantage

47.     In or about December 2018, Ms. Jones placed a telephone call to First Advantage and spoke with a representative. She explained her entire situation in detail and specifically stated that she was calling to dispute inaccurate criminal record information included in her background report that recently resulted in her termination from her job. The representative instructed Ms. Jones to email a copy of her driver's license and Social Security card to dispute.docs@fadv.com.

48.     In or about December 2018, Ms. Jones sent an email to dispute.docs@fadv.com and attached copies of her driver's license and Social Security card.

### First Advantage Fails to Conduct a Reasonable Reinvestigation and Correct Plaintiff's Background Check After Plaintiff Submitted a Dispute Directly With First Advantage

49.     In or around the first week of January 2019, Ms. Jones received mail correspondence from First Advantage containing a copy of her background report, which was last updated on January 3, 2019. The three misdemeanor convictions and two traffic offenses belonging to Convicted Misdemeanant Aaliyah Jones had

been removed from this version of her background report and her criminal history score was marked as "Eligible." However, now her Social Security Verification score was marked as "Decisional." Ms. Jones thought nothing of this because Ms. Mallory had told her that once First Advantage removed the inaccurate criminal record information from her background report she would be able to help her find employment.

50.     Shortly thereafter, Ms. Jones placed a telephone call to Ms. Mallory and notified her that she had received a copy of her updated background report from First Advantage and that the inaccurate criminal record information had been removed. Ms. Jones then asked if Ms. Mallory could communicate this to Moen so that she could return to work. Ms. Mallory reviewed the updated background report that she had received from First Advantage and told Ms. Jones that she could not approve her to return to Moen or for any other jobs because there was still a "red flag" showing up on her background report, now regarding her Social Security Verification score.

51.     Frustrated and running out of options, in or about early February 2019 Ms. Jones placed another telephone call to First Advantage and spoke with a representative. She explained her entire situation in detail and specifically stated that she was calling to dispute the Social Security Verification decisional score

included in her background report. Ms. Jones specifically stated that there were no issues with her Social Security number and that she had previously sent in a copy of her Social Security card in December 2018, and that First Advantage's Social Security Verification decisional score was inaccurate and was preventing her from obtaining employment. The representative once again instructed Ms. Jones to email a copy of her driver's license and Social Security card to dispute.docs@fadv.com.

52.    In or about February 2019, Ms. Jones sent an email to dispute.docs@fadv.com and attached copies of her driver's license and Social Security card.

53.    To date, Ms. Jones has not heard back from First Advantage.

54.    After receiving Ms. Jones' disputes in November 2018 and February 2019, First Advantage failed to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the inaccurate information from Ms. Jones' file.

55.    In or about March 2019, still searching for full-time employment, Ms. Jones placed a telephone call to Ms. Mallory and asked if her background report had finally been corrected. Ms. Mallory checked Adecco's computer system and confirmed that there was still a "red flag" on Ms. Jones' background report

regarding her Social Security Verification, which prevented her from placing Ms. Jones for employment. Ms. Mallory told Ms. Jones to call her back once her background report was corrected.

56.    On June 18, 2019, Ms. Jones received a text message from Adecco asking if she was interested in being considered for full-time employment with Moen at the New Bern, North Carolina location. Ms. Jones replied, communicating her interest. Immediately thereafter, she received a text message from Adecco asking if she had gotten her background report cleared so that she could start working for Moen. Ms. Jones replied that she believed it had been corrected.

57.    Later that day, Ms. Jones placed a telephone call to Adecco and spoke with Ms. Mallory. Ms. Jones asked about the status of her background report and Ms. Mallory informed her that there were "new charges" appearing on her First Advantage background report.

58.    To date, Ms. Jones has been unable to obtain employment at Moen or through Adecco because of First Advantage's unlawful reporting and failure to comply with the FCRA.

59.    In creating and furnishing Plaintiff's employment report, First Advantage failed to follow reasonable procedures to assure that the report was as accurate as maximally possible. In particular, First Advantage allowed a match

based solely on the confluence of a common name, in spite of the existence of information in the underlying criminal records which clearly establishes that Convicted Misdemeanant Aaliyah Jones is not Plaintiff, such as the fact that each digit of the last four of Convicted Misdemeanant Aaliyah Jones' Social Security number as listed in the underlying court records is different from the each of last four digits of Plaintiff's Social Security number as listed in the employment report, and the two do not share a middle name.

60.    As a result of First Advantage's violations of the FCRA, Plaintiff has suffered a range of actual damages, including without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; loss of time and money trying to correct her background report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, frustration, humiliation, and embarrassment.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

61.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1-60, above.

21

62.    Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

63.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

64.    At all times pertinent hereto, the above-mentioned background check report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

65.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Plaintiff's background report and the files it published and maintained.

66.    As a result of Defendant's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered a range of actual damages, including without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; loss of time and money trying to correct her background report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, frustration, humiliation, and embarrassment.

67.    Defendant willfully violated 15 U.S.C. § 1681e(b) in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

68.    In the alternative, Defendant negligently violated 15 U.S.C. § 1681e(b), which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

69.    Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**

70.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1-60, above.

71.    Upon receiving multiple disputes from Plaintiff, First Advantage negligently and willfully failed to perform a reasonable reinvestigation of the disputed information in violation of 15 U.S.C. § 1681i.

72.    As a result of Defendant's violations of 15 U.S.C. § 1681i, Plaintiff has suffered a range of actual damages, including without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; loss of time and money trying to correct her

background report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, frustration, humiliation, and embarrassment.

73.    Defendant willfully violated 15 U.S.C. § 1681i in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

74.    In the alternative, Defendant negligently violated 15 U.S.C. § 1681i, which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

75.    Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a)    Determining that Defendant negligently and/or willfully violated the FCRA;

b)    Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

c)    Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

d)   Granting further relief, in law or equity, as this Court may deem

appropriate and just.

## DEMAND FOR JURY TRIAL

76.   Plaintiff demands a trial by jury.

Dated: October 2, 2019

WEINER & SAND LLC

/s/ *Jeffrey B. Sand*
Jeffrey B. Sand
GA. Bar No. 181568
Andrew L. Weiner
GA Bar No. 808278
800 Battery Ave., Suite 100
Atlanta, GA 30339
Telephone: (404) 205-5029
Fax: (866) 800-1482
js@atlantaemployeelawyer.com


BERGER & MONTAGUE, P.C.

/s/ *Hans W. Lodge*
Hans W. Lodge, MN Bar No. 397012
(*pro hac vice* motion to be filed)
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 607-7794
Fax: (612) 584-4470
hlodge@bm.net

*ATTORNEYS FOR PLAINTIFF*